UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JONATHAN BACARELLA

    Plaintiff,

v.                                                Case No. 2:21-cv-90-JLB-NPM

ALLSTATE INSURANCE COMPANY,

    Defendant.

**ORDER**

    Plaintiff Jonathan Bacarella is a former agent for Defendant Allstate Insurance Company ("Allstate"). His relationship with Allstate was governed by an extensive agency agreement. Allstate terminated that agreement after it discovered that Mr. Bacarella was using admittedly false bank routing information on new clients' insurance applications to ensure that those clients received a discount from Allstate. Mr. Bacarella claims he used the false information to prevent Allstate from losing the clients. He now sues Allstate for breach of contract because: (1) he believes that he was improperly terminated without cause or notice and opportunity to cure; (2) Allstate did not assist him when he sought guidance on whether his use of false information was proper; and (3) Allstate maliciously refused to approve a purchaser for his book of business, which it retained discretion to do under the agreement. In addition, Mr. Bacarella seeks declaratory relief.

    Allstate moves for judgment on the pleadings and argues that Mr. Bacarella has failed to state any claim. (Doc. 18.) After reviewing Allstate's motion, Mr.

Bacarella's response, Allstate's reply, and the appropriate parts of the record, the Court **GRANTS THE MOTION IN PART** and **DENIES IT IN PART**. The motion is granted to the extent that Mr. Bacarella has not stated a claim for breach of contract based on failure to assist and has not stated a claim for declaratory relief. As to Mr. Bacarella's allegations that Allstate terminated him without cause and failed to consider the sale of his book of business to a qualified purchaser, Allstate's motion for judgment on the pleadings is denied.

## BACKGROUND

In 2019, Mr. Bacarella and Allstate executed an exclusive agency agreement, under which Mr. Bacarella would sell insurance on Allstate's behalf. (Doc. 3-1.) The agreement incorporated the terms of Allstate's independent contractor manual, which required Mr. Bacarella to comply with Allstate's policies.[1] (Id. at 1; Doc. 18-1 at 26, 45.) The agreement and manual also impose broad duties on Mr. Bacarella to, among other things, maintain accurate records, refrain from falsifying documents, avoid giving unauthorized or illegal discounts and rebates to customers as inducement to buy insurance, and not "misrate or misclassify" a premium to make a sale. (Doc. 3-1 at 6; Doc. 18-1 at 44–46.) Either party could terminate the agreement without cause after providing ninety days' written notice to the non-terminating party. (Doc. 3-1 at 8.) Allstate could also terminate the agreement

---

[1] The manual restricts Allstate's agents from "engaging in any activity that is fraudulent or contrary to the law or the company's policies and procedures." (Doc. 18-1 at 45.) A different sentence on the same page of the manual restates this same obligation, explaining that its agents are "expected to comply with [Allstate's] policies and procedures." (Id.)

with cause immediately upon providing notice to Mr. Bacarella. (Id.) The agreement contained a non-exhaustive list of what constitutes "cause," including "fraud, forgery, misrepresentation, or conviction of a crime." (Id.)

The agreement further provides that Mr. Bacarella has "an economic interest" in the "customer accounts" he develops and, upon termination, may transfer this "entire economic interest in the business written under [the agreement] . . . to an approved buyer." (Id. at 7.) Allstate, however, "retains the right in its exclusive judgment to approve or disapprove such a transfer." (Id.)

On August 18, 2020, Allstate gave Mr. Bacarella written notice that it was terminating the agreement for cause. (Doc. 3-2.) The notice did not describe a precise cause for the termination but mentioned that such cause included "providing false information to the company." (Id. at 1.) According to Mr. Bacarella, Allstate terminated the agreement after it discovered that he had used "incorrect bank routing and account numbers for no more than 10 insurance applications." (Doc. 3 at 2, ¶ 9.) Mr. Bacarella gives two justifications for his behavior: (1) he wanted the applicants "to receive a discount on their insurance premium by allowing [Allstate] to directly debit the applicant's account for each insurance premium payment when due"; and (2) the applicants were not able to immediately provide him with their routing or account numbers, and Mr. Bacarella used fake numbers as placeholders until the applicants could give him the correct information. (Id., ¶¶ 9–10.) Either way, Mr. Bacarella acknowledges that if he had not used the fake numbers, "[Allstate's] rules would have prohibited the submission of the application for

3

insurance and the new client would have potentially been lost." (Id.)  He also claims that he "requested assistance" from Allstate's "designated Field Specialist Leader" regarding the propriety of the placeholder numbers and "other issues" on "several occasions," but "the designated Field Specialist Leader failed to respond." (Id., ¶ 12.)  Moreover, Mr. Bacarella alleges that the placeholder numbers were used for a "brief period" of "one to seven days," until the applicants could provide him with correct routing numbers. (Id., ¶ 10.)

The notice of termination further reiterated that Mr. Bacarella may "elect to sell the economic interest in [his] book of business," but "Allstate has the absolute right of approval of the buyer," and any prospective purchaser "must meet Allstate's eligibility requirements." (Doc. 3-2 at 1.)  The notice gave Mr. Bacarella a deadline of December 1, 2020 to complete the sale. (Id.)  Mr. Bacarella claims that he "found a qualified purchaser well within the [deadline] granted by the [a]greement," but Allstate "refused to extend the time for the purchaser to complete the qualifications [required for the] purchase and actively dissuaded the purchaser from purchasing [Mr. Bacarella's] 'book of business.'" (Doc. 3 at 2.)

Mr. Bacarella suspects that Allstate terminated the agreement "for nefarious reasons," including "a campaign by [Allstate] to eliminate or severely curtail [its] Enhanced Compensation Plan program," in which he participated. (Id., ¶ 15.)

4

DISCUSSION[2]

I. **The Court partially grants Allstate's motion as to Mr. Bacarella's claim for breach of contract.**

In Florida, "[t]he elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages." Abbott Lab'ys, Inc. v. Gen. Elec. Cap., 765 So. 2d 737, 740 (Fla. 5th DCA 2000).[3] "The intent of the parties governs contract interpretation and that intent is to be determined from the plain language of the agreement and the everyday meaning of the words used." Burlington & Rockenbach, P.A. v. L. Offs. of E. Clay Parker, 160 So. 3d 955, 958 (Fla. 5th DCA 2015). "A party may not maintain a claim for breach of contract where the plain language of the contract upon which the claim is based unambiguously establishes that the defendant did not breach the duty alleged in the complaint." Detwiler v. Bank of Cent. Fla., 736 So. 2d 757, 758 (Fla. 5th DCA 1999) (citation omitted).

Mr. Bacarella's complaint includes three theories supporting his breach-of-contract claim against Allstate: (1) terminating him without cause and without notice or opportunity to cure, (2) failing to "offer assistance" to Mr. Bacarella when

---

[2] After pleadings are closed, Federal Rule of Civil Procedure 12(c) allows parties to move for judgment on the pleadings. "Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998). "When we review a judgment on the pleadings . . . we accept the facts in the complaint as true and we view them in the light most favorable to the nonmoving party." Id.

[3] "Federal courts sitting in diversity apply the substantive law of the state in which the case arose." Pendergast v. Sprint Nextel Corp., 592 F.3d 1119, 1132 (11th Cir. 2010) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)). Both parties assume that Florida law governs the agreement at issue in this case.

he requested it from Allstate's Field Specialist Leader, and (3) failing to properly evaluate a qualified purchaser of Mr. Bacarella's book of business. For the reasons below, the Court will deny the motion as to the first and third theories but grant the motion as to the second theory.

### A. Mr. Bacarella states a claim for breach of contract based on termination without cause and without notice or opportunity to cure.

Mr. Bacarella alleges that Allstate breached the agreement by terminating him "without cause" and "without notice or opportunity to cure." (Doc. 3 at 3, ¶ 21.) Allstate moves for judgment on the pleadings on this theory because, in its view, Mr. Bacarella's own allegations establish that the agreement was terminated for cause. (Doc. 18 at 12–15.) As Mr. Bacarella outlines in his complaint, if he had not used placeholder routing numbers on some of his applications, "[Allstate's] rules would have prohibited the submission of the application for insurance and the new client would have potentially been lost." (Doc. 3 at 2, ¶ 11(emphasis added).) This allegation, according to Allstate, conclusively establishes that Mr. Bacarella was terminated for cause because Allstate's manual affirmatively requires Allstate's agents to comply with the company's policies. (Doc. 18 at 12; Doc. 18-1 at 45.)

The Court is not persuaded by Allstate's argument. At most, Mr. Bacarella's allegations imply that some internal Allstate rule—which is not apparent from the agreement or the manual—requires rejection of any insurance application that is missing a routing number. This acknowledgement does not necessarily imply that Mr. Bacarella's use of placeholder numbers was, by itself, a breach of the

6

agreement. At a minimum, such an inference cannot be made when viewing the allegations in the complaint in the light most favorable to the plaintiff.

The various portions of the agreement and manual cited by Allstate likewise do not militate in favor of judgment on the pleadings. Under Florida law, the question of whether an employee has breached the terms of his employment contract to such a degree that it justifies discharge is to be decided by the trier of fact when there is conflicting evidence. See Amjad Munim, M.D., P.A. v. Azar, 648 So. 2d 145, 148 (Fla. 4th DCA 1994) (indirectly quoting Jimarye, Inc. v. Pipkin, 181 So. 2d 669, 669 (Fla. 1st DCA 1966)). Similarly, whether conduct rises to the level of fraud is typically a question for the trier of fact to resolve. See Haendel v. Paterno, 388 So. 2d 235, 238 (Fla. 5th DCA 1980).

Mr. Bacarella admits that he used placeholder routing and account numbers for "no more than 10 insurance applications," but he claims the placeholder numbers were used for a "brief period" of "one to seven days" until applicants could provide him with a correct routing number. (Doc. 3 at 2, ¶¶ 9–10.) Based on the pleadings alone, the Court cannot determine whether this conduct rose to the level of fraud, forgery, misrepresentation, falsification of documents, or any similar concept. As Mr. Bacarella points out, none of these terms are expressly defined in the agreement. (Doc. 19 at 10.) And Mr. Bacarella's counter to Allstate's argument is purely factual—he does not believe that his conduct rose to the level of anything that may have been prohibited by the agreement. Assuming the common legal meaning of terms like "fraud" and "falsification" would apply, the Court is not

prepared to make a factual determination as to whether Mr. Bacarella's activities gave Allstate cause to terminate him under the agreement. See Amjad Munim, M.D., P.A., 648 So. 2d at 148; Jimarye, Inc., 181 So. 2d at 669.

For similar reasons, the Court is not prepared to conclude that Mr. Bacarella's actions constitute some kind of backdoor discount, rebate, or other improper incentive. The agreement only prohibits discounts that are unauthorized by Allstate or otherwise prohibited by law. (Doc. 18-1 at 45.) The precise qualifications for the discount Mr. Bacarella had in mind—assuming Allstate offers it in the first place—have not been entirely explained to the Court. As best the Court can gather, Mr. Bacarella's temporary utilization of placeholder bank routing information (until his clients provided their actual banking routing information) may have been a backdoor way to give his clients a direct debit discount from Allstate that they were not entitled to receive. But it remains unclear whether a client who does not provide bank routing information immediately when applying for insurance is or is not qualified for this discount. Without a fundamental understanding of how applicants qualify for this discount, the Court is not prepared to enter a judgment on the pleadings.

At most, the Court can infer that a discount exists, that banking and routing numbers are necessary to qualify for the discount, and that Mr. Bacarella temporarily used placeholder numbers in some applications until the applicants provided him with the actual numbers. Given this scant record, the Court lacks

sufficient information to hold that whatever discount these applicants received was not "authorized" by Allstate.

Moreover, it is unclear whether Mr. Bacarella's actions were indeed motivated by offering applicants a discount. In paragraph 9 of the complaint, Mr. Bacarella alleges that the placeholder numbers were used to give applications "a discount on their insurance premium by allowing [Allstate] to directly debit the applicant's account for each insurance premium when due." (Doc. 3 at 2, ¶ 9.) But a later paragraph provides that Allstate would have flat-out rejected the applications without the placeholder numbers. (Id., ¶ 11.) On the face of the pleadings, it is therefore unclear whether the placeholder numbers were intended to offer applicants a discount or simply a prerequisite for their applications to be considered in the first place—perhaps both. In any event, the Court cannot conclusively resolve these factual questions at the pleading stage and therefore declines to enter judgment on the pleadings in favor of Allstate. The Court notes, however, that its denial of Allstate's motion on this ground was a close call.

      **B.**    **Mr. Bacarella does not state a claim for breach of contract based on Allstate's failure to offer him assistance.**

Mr. Bacarella also alleges that Allstate breached the agreement by failing to offer him "assistance." (Doc. 3 at 2, ¶¶ 12-13.) By this, Mr. Bacarella means that he requested guidance from Allstate's "Field Specialist Leader" on the propriety of the placeholder numbers and "other issues." (Id., ¶ 12.) Allstate moves for judgment on the pleadings as to this theory because Mr. Bacarella has not alleged that Allstate's failure to offer him "assistance" violated any specific provision of the

9

agreement. (Doc. 18 at 15–17.) Mr. Bacarella responds by arguing that he received assurances from Allstate that "support and guidance" would be offered, and these assurances ultimately induced him to sign the agreement. (Doc. 19 at 11–12.) As evidence, Mr. Bacarella cites an affidavit that he filed contemporaneously with his response. (Doc. 20 at 2, ¶ 5.) The representations in the affidavit, according to Mr. Bacarella, constitute parol evidence of a "contemporaneous oral agreement which induced execution of [a] written contract." (Doc. 19 at 12.)

Mr. Bacarella's argument fails for at least two reasons. For one, the Court need not consider self-serving affidavits when deciding a motion for judgment on the pleadings. Cf. Thornton v. City of St. Petersburg, No. 8:11-cv-2765-T-30TGW, 2012 WL 3128946, at *2 (M.D. Fla. Aug. 1, 2012) ("Defendant's affidavits only create an issue of fact, which is outside the scope of consideration at this stage of the litigation process."). Additionally, the Eleventh Circuit has explained that the inducement exception to Florida's parol evidence rule applies only when the underlying contract "does not purport to contain the entire agreement between the parties." Solymar Invs., Ltd. v. Banco Santander S.A., 672 F.3d 981, 992 (11th Cir. 2012) (indirectly quoting Bond v. Hewitt, 149 So. 606, 608 (Fla. 1933)). The agreement in this case has an integration clause. (Doc. 3-1 at 1.)

Even if Mr. Bacarella could overcome these hurdles, his argument would nevertheless fail. According to Mr. Bacarella, Allstate entered into an oral agreement to "assist" him with interpreting the parties' underlying agency agreement. Allstate then breached this oral agreement by failing to explain to Mr.

10

Bacarella whether his practice of using placeholder numbers on insurance applications—along with unspecified "other issues"—was a violation of company policy.  In other words, he asserts that Allstate breached an open-ended agreement to offer him legal advice on demand.  While the Court is obligated to draw all inferences in Mr. Bacarella's favor, this is simply a bridge too far.  See Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002) (explaining that, at the pleading stage, a court need not credit "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts").  Mr. Bacarella's requests for aid may be relevant insofar as they demonstrate his good faith attempts to comply with the agency agreement.  But, as currently pleaded, they do not provide an independent basis for a breach-of-contract claim.  The Court will, therefore, grant the motion for judgment on the pleadings as to this theory.

### C. Mr. Bacarella states a claim for breach of contract based on Allstate's failure to properly evaluate a qualified purchaser of his book of business.

Finally, Mr. Bacarella contends that Allstate breached the agreement by failing to properly evaluate a qualified purchaser of Mr. Bacarella's book of business.  Specifically, Mr. Bacarella claims that Allstate "refused to extend the time for the purchaser to complete the qualifications [required for the] purchase and actively dissuaded the purchaser from purchasing [Mr. Bacarella's] 'book of business.'"  (Doc. 3 at 2.)  Allstate argues that it is entitled to judgment on the pleadings because, under the plain language of the agreement, it retained complete discretion over approval of any buyer.  (Doc. 18 at 17–19.)  Mr. Bacarella responds

that Allstate "failed to so much as even evaluate or consider persons of interest for the purposes of approving or [disapproving] them as purchasers." (Doc. 19 at 14.)

Under Florida law, "[e]very contract imposes an obligation of good faith and fair dealing between the parties in its performance and its enforcement; if the promise is not expressed by its terms in the contract, it will be implied." Share v. Broken Sound Club, Inc., 312 So. 3d 962, 969 (Fla. 4th DCA 2021) (internal quotation marks omitted) (quoting Richard A. Lorde, Williston on Contracts § 63:22 (4th ed. 2020)). "With the implied covenant, one party cannot capriciously exercise discretion accorded it under a contract so as to thwart the contracting parties' reasonable expectations." Ernie Haire Ford, Inc. v. Ford Motor Co., 260 F.3d 1285, 1291 (11th Cir. 2001). To plead a claim for breach of the covenant of good faith and fair dealing, a plaintiff must allege

> a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence; but, rather by a conscious and deliberate act, which unfairly frustrates the agreed common purpose and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement.

Shibata v. Lim, 133 F. Supp. 2d 1311, 1319 (M.D. Fla. 2000) (citing Cox v. CSX Intermodal, Inc., 732 So. 2d 1092, 1097 (Fla. 1st DCA 1999)).

Viewing the complaint's allegations in the light most favorable to Mr. Bacarella, he has stated a claim for breach of the implied covenant of good faith and fair dealing, which is present in every Florida contract. Mr. Bacarella's position is that Allstate never intended to approve any prospective purchaser. This theory is facially supported by Mr. Bacarella's allegations that Allstate "actively dissuaded"

12

his desired purchaser and declined to extend the deadline for approval of the sale despite the purchaser "pass[ing] the initial examinations." (Doc. 3 at 2, ¶ 14(c).) Thus, Mr. Bacarella believes Allstate acted with "some degree of malice" in "failing to cooperate with [him] in the sale of [his] 'book of business.'" (Id. at 2, ¶ 14.)

While Allstate retained discretion to approve buyers under the agreement, an agent contracting with Allstate would reasonably assume that some hypothetical buyer would be acceptable to Allstate. If not, the contractual process for selling an agent's book of business would be illusory. A bad-faith refusal to approve any buyer would, therefore, unfairly frustrate the agent's reasonable expectations. Shibata, 133 F. Supp. 2d at 1319 (citing Cox, 732 So. 2d at 1097).

Accordingly, Mr. Bacarella's allegations are enough to state a claim for breach of the implied covenant of good faith and fair dealing.

## II. The Court grants Allstate's motion for judgment on the pleadings as to Mr. Bacarella's claim for declaratory relief.

Apart from his breach-of-contract claim, Mr. Bacarella also seeks relief in the form of a declaratory judgment. (Doc. 3 at 4.) Under the Declaratory Judgment Act, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). But declaratory relief is only appropriate "[i]n a case of actual controversy." Id. Thus, a plaintiff seeking a declaratory judgment "must allege the existence of a real and substantial case or controversy that is 'definite and concrete, touching the legal relations of parties having adverse interests.'" Safety Vision,

13

LLC v. Hillsborough Area Reg'l Transit Auth., No. 8:20-cv-2556-CEH-JSS, 2021 WL 2337612, at *2 (M.D. Fla. June 8, 2021) (indirectly quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240–41 (1937)). The plaintiff must also "allege facts demonstrating that the harm caused by the defendants is ongoing or will be repeated in the future." Rager v. Augustine, 760 F. App'x 947, 954 (11th Cir. 2019) (citing Emory v. Peeler, 756 F.2d 1547, 1552 (11th Cir. 1985)).

Mr. Bacarella does not allege any threat of ongoing harm or harm that may be repeated in the future. In fact, his claim for declaratory relief is not supported by any specific allegations apart from his pre-removal recitation of Florida's elements for declaratory relief.[4] The entirety of the harm alleged in the complaint appears to have happened in the past. Allstate has already terminated the agreement and declined to approve a purchaser for Mr. Bacarella's book of business. This harm will not occur in the future, and declaratory relief is therefore inappropriate. Thus, the Court grants Allstate's motion for judgment on the pleadings as to Count II.

## CONCLUSION

For the reasons above, it is **ORDERED**:

1. Allstate's motion for judgment on the pleadings (Doc. 18) is **GRANTED IN PART and DENIED IN PART**.

---

[4] Federal law controls declaratory relief in a diversity case. See Coccaro v. Geico Gen. Ins. Co., 648 F. App'x 876, 880–81 (11th Cir. 2016) ("Florida's Declaratory Judgment Act, found in Chapter 86 of the Florida Statutes, is a procedural mechanism that confers subject matter jurisdiction on Florida's circuit and county courts; it does not confer any substantive rights.").

2. Count I is **PARTIALLY DISMISED WITHOUT PREJUDICE** to the extent it asserts a breach-of-contract theory based on failure to assist.

3. Count II is **DISMISSED WITHOUT PREJUDICE** in its entirety.

4. In all other respects, the motion is **DENIED**.

**ORDERED** in Fort Myers, Florida, on November 15, 2021.

*/s/ John L. Badalamenti*
JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE